*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0034p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                              No. 08-6203

JERRY MORRISON,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20287-001—Bernice B. Donald, District Judge.

Argued: January 21, 2010

Decided and Filed: February 12, 2010

Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Karimbumkara Jayaraman, Memphis, Tennessee, for Appellant. G. Kirby May, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Karimbumkara Jayaraman, Memphis, Tennessee, for Appellant. G. Kirby May, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. A jury convicted Jerry Morrison of being a felon in possession of a firearm. On appeal, he argues that the evidence was insufficient to convict him and that the district court's jury instructions were erroneous. We reject these arguments, and affirm.

1

## I.

On November 28, 2006, Memphis police officers Robert Strickland and Shannon Merritt observed a Ford Explorer roll through a stop sign, which made them suspect the driver was impaired. They followed the vehicle for a short distance and then initiated a traffic stop.

Once the vehicle was stopped, Strickland approached the driver's side, where Morrison was seated. Merritt approached the passenger's side, where someone else was seated. The officers noticed a strong smell of marijuana coming from the vehicle. As a result, Strickland instructed Morrison to exit the vehicle for a field-sobriety test.

As soon as Morrison stepped out of the vehicle, Strickland noticed a pistol grip sticking out between the driver's seat and the center console. It turned out to be a loaded, .32 caliber Colt. According to Strickland, the gun was located "less than inches" away from Morrison and "probably was rubbing his side or if he was wearing a seat belt he might have bumped into it within inches of the seat." Merritt could not see the gun from the passenger's side of the vehicle; but later he walked around to the driver's side, and from there could see the gun lodged between the driver's seat and the center console.

Morrison had a prior felony conviction, so he was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was convicted after a jury trial. The district court sentenced him to 179 months' imprisonment.

This appeal followed.

## II.

### A.

Morrison first challenges the sufficiency of the evidence supporting his conviction. We can reverse on that ground only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To obtain a conviction under § 922(g)(1), the government must prove that "the defendant had a previous felony conviction," that "the defendant knowingly possessed the firearm specified in the indictment," and that "the firearm traveled in or affected interstate commerce." *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007). Morrison stipulated to the first element at trial, and does not challenge the third on appeal. His argument, rather, is that the government did not prove he possessed the firearm found in the vehicle he was driving.

There was some confusion in the district court as to whether the government was limited to an actual-possession theory at trial. Suffice it to say that we think the government was limited to that theory. "Actual possession requires that the defendant have 'immediate possession or control' of the firearm." *Grubbs*, 506 F.3d at 439 (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)); *see also United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (same). Whether a defendant "had immediate access to the weapon" is significant to the question whether he had immediate control of it. *Grubbs*, 506 F.3d at 439.

The government's proofs in this case were pretty spare. There was no evidence as to who owned the vehicle in which the gun was found. There was no evidence as to who the passenger was. There were no fingerprints on the gun. And there was no proof that Morrison owned the gun, although in these cases there almost never is.

But the proofs were adequate nonetheless. We view the evidence "in the light most favorable to the prosecution[.]" *Jackson*, 443 U.S. at 319. And so viewed, the evidence established two critical facts. The first is that the gun was in plain view for Morrison as he drove the vehicle. The second is that the gun was "less than inches" away from Morrison, and "probably was rubbing his side." Taken together, these facts support an inference that Morrison knew the gun was there and that it was within his immediate control. Indeed the arrangement here—with the gun next to Morrison's hip, and his knowledge that it was there—was functionally equivalent to Morrison carrying it in a holster. Surely Congress meant to proscribe this sort of thing when it enacted the felon-in-possession law.

Morrison argues at some length that this is a "mere proximity" case, and that under our precedents mere proximity is not enough to convict. To which there are several responses. First, the "mere proximity" cases are constructive-possession cases, which apply a different rule than the actual-possession rule we apply here. *See, e.g., United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006). Second, a case where the weapon is actually rubbing against the felon's hip—which is the case here—would test the mere-proximity rule as it has never been tested before. At some point a difference in degree becomes a difference in kind.

But third, this is not a mere-proximity case. The critical difference between this case and, say, *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009), is that here the government presented evidence that Morrison *knew* the gun was within his immediate control. Indeed what the mere-proximity cases seem concerned about, above all, is the conviction of a defendant who did not even know the gun was there. In *Bailey*, for example, the court recounted a long hypothetical about a teenage driver who, through no fault of his own, is completely unaware that a gun lies beneath his seat; and the court said the record before it made *Bailey* no different from that hypothetical. *Id.* at 948-49. But here the jury was entitled to find that Morrison knew full well that the gun was there. And that knowledge is a fact, beyond proximity, that puts this case in another bin altogether.

Our decision in *Parker v. Renico*, 506 F.3d 444 (6th Cir. 2007), is not to the contrary. *Parker* was a habeas case in which the issue was constructive rather than actual possession. Under the facts present there, the court held that the defendant's proximity to the gun and his knowledge of its presence was not enough to convict him. But the facts matter in these cases; and the facts there were very different from those here. There were three other men in the car in which Parker was found, one of whom had just shot another man. *See id.* at 445. Parker had been sitting in the back seat, behind the driver's seat, but was convicted of possessing a gun found on the other side of the back seat, behind the passenger's seat, where another passenger had been seated. *See id.* at 445-46. *Parker* thus resembles a case brought against the passenger in the

vehicle Morrison was driving, more than it does the case against Morrison himself.  And Parker, unlike Morrison, had not effectively holstered the gun.  The evidence was sufficient to support Morrison's conviction.

B.

Morrison also argues that the district court's jury instructions regarding actual possession were inconsistent and confusing.  In general, we "may reverse a judgment based on an improper jury instruction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial."  *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (internal quotation marks omitted).  But Morrison did not object to the relevant jury instructions in the district court, so we review them only for plain error.  *See* Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b).  "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice."  *Newsom*, 452 F.3d at 605 (internal quotation marks and brackets omitted).

The instructions in this case were not ideal.  The court first told the jury that possession "does not necessarily mean that the defendant must hold [the weapon] physically, that is, have actual possession of it.  As long as the firearm is in the defendant's control he possesses it."  The court then said the jury could find possession if it found "that the defendant had actual possession of the firearm[.]"  Later, the court added that the "government must prove that the defendant had actual possession[.]"  The second statement is nearly a tautology; and the third is at odds with the first.  So to some extent Morrison has a point.

Taken as a whole, however, the instructions sufficiently conveyed the elements of the charge.  The instructions accurately stated that possession requires "control" of a firearm; that possession must be "knowing[]"; and that the firearm must be "possessed purposefully and voluntarily and not by accident or mistake."  The court also clarified the limits of the concept, at Morrison's request, by instructing the jury that "just being present where something is located does not equal possession."  The district court would have done well to clarify further.  But as they were, the instructions were not plain error.

The district court's judgment is affirmed.