NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0061n.06

Case No. 14-1328

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 21, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BENTO SHORDJA, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, SILER, and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Bento Shordja appeals his conviction for unlawful procurement of citizenship (Count 1) and making materially false statements (Count 2). He now challenges the jury instructions for Count 1 and the sufficiency of the evidence for both counts. We **AFFIRM**.

**I.**

Shordja, a native of Albania, entered the United States in 1997 using a fraudulent Italian passport. He filed an Application for Naturalization ("Application") in 2007, which led to a naturalization interview in 2009. He denied having entered the United States illegally on his Application and in his naturalization interview. Shordja also told immigration officials that he had never provided false or misleading information or lied to a government official in an effort to

obtain an immigration benefit. Shordja's Application was approved, and he became a U.S. citizen in 2009.

Shordja's false statements on his Application and in his naturalization interview first came to the Government's attention in 2012 when Shordja used his 2009 naturalization as the basis for requesting to have his wife and daughter immigrate to the United States. In the course of processing that request, Shordja admitted that he entered the United States using a fake Italian passport.

In 2013, Shordja was convicted for unlawful procurement of citizenship, in violation of 18 U.S.C. § 1425(a) (Count 1), and making materially false statements to a government official, in violation of 18 U.S.C. § 1001(a)(2) (Count 2).

At trial, the government called several witnesses. Douglas Pierce and JoAnn Stewart were both employed as supervisors of immigration services officers for the United States Citizenship and Immigration Services ("USCIS"). Both Pierce and Stewart testified about specific questions and answers Shordja provided on his Application. Question 23 asked, "Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" Question 24 asked, "Have you ever lied to any U.S. government official to gain entry or admission into the United States?" The word "ever" appeared in bold font in both questions. Shordja answered "no" to both of these questions on his Application. Stewart testified that she personally interviewed Shordja in 2009. She asked Shorjda the same questions from the application during his naturalization interview, and again he responded "no" to questions 23 and 24.[1]

---

[1] The evidence at trial revealed that Shordja had previously applied for naturalization in 2005. In his 2005 application, Shordja answered "no" to questions 23 and 24, which are identical to questions 23 and 24 on the Application.

Stewart testified that an applicant's answer to question 23 is very important because if an applicant "provided misleading information in order to obtain an immigration benefit, that could have an impact on whether or not [the applicant] could become a U.S. citizen." Stewart testified that if Shordja had told her that he entered the United States using a fake Italian passport, it would have affected the actions she took and the light in which she evaluated his Application. Similarly, Pierce testified about the importance of candor on naturalization applications. When asked what would have happened if Shordja had told Stewart the truth during his naturalization interview, Pierce testified that USCIS staff would have looked into Shordja's file to check his answers from his 2002 petition to become a permanent resident. Had Shordja not disclosed his illegal entry on his 2002 paperwork—which he had not—yet done so on his Application or in his naturalization interview, it would have "definitely impact[ed] his eligibility for naturalization. Because if he provided a false or misleading information to obtain his green card in the first place, then under Section 318 of the Immigration and Nationality Act, he would not be eligible for naturalization."

Brentt Streetman, the immigration agent who conducted Shordja's 2012 interview, also testified that, during the 2012 interview, he asked Shordja to explain his initial presence in the United States. He also testified that Shordja responded by admitting that he entered the United States in 1997 using a fake Italian passport. Shordja told Streetman that "on every occasion" he met with an immigration agent he always told them that he used a fake passport to enter the United States.

Although that information was inconsistent with Shordja's immigration file—which showed that on the several occasions when Shordja spoke with immigration officials he always stated that he came here legally—Shordja seemed surprised when Streetman told him that the

fake passport was not listed on his Application. During the 2012 interview, Streetman informed Shordja that they had previously met. Shordja had filed a petition to register as a permanent resident in 2002, and Streetman was the district adjudicator assigned to conduct his interview. Streetman testified that question 10 on the 2002 petition asked if Shordja had ever entered the United States by fraud to which he had answered "no," and Shordja confirmed his answer on the petition in the 2002 interview.[2]

Shordja moved for judgment of acquittal at the close of the Government's evidence, and the district court denied his motion. Shordja then presented evidence that his "false statements" were merely good-faith misunderstandings. He again moved for judgment of acquittal at the close of all the evidence. The district court determined that the Government's theory remained plausible and denied the motion.

Shordja was found guilty of both counts and was sentenced to probation.

## II.

Challenges to jury instructions that are not raised below are reviewed for plain error on appeal.[3] "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Semrau*, 693 F.3d 510, 528 (6th Cir. 2012) (quoting *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010)).

---

[2] The Government also called Pauline Vier, who testified that her job duties included helping aliens complete immigration documents. She helped Shordja complete his permanent resident petition in 2002. Vier testified that she would have read question 10 to Shordja and also paraphrased—by asking if he had used phony papers to enter the country—to ensure that Shordja understood the lengthy question.

[3] He acknowledges that he did not object to the jury instructions below and that plain error applies.

Shordja was found guilty of Count 1 for procuring citizenship or naturalization unlawfully, in violation of 18 U.S.C. § 1425(a). "Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship . . ." is guilty of a federal offense. 18 U.S.C. § 1425(a). The district court instructed the jury regarding the elements of 18 U.S.C. § 1425(a) as follows:

> Count 1. In order to find the defendant guilty of the . . . offense charged in Count 1, the Government must prove the following four things beyond a reasonable doubt:
> First, that the defendant made a false statement or declaration, either in an application document or an interview, I should say, or both. For you to find that this element is proven, you must unanimously agree that a statement in a document was false or unanimously agree that a statement made during an interview was false, or both.
> And second, that the statement was made for the purpose of becoming a United States citizen.
> Third, that an honest statement would predictably have disclosed other facts that are relevant, significant, that is, to the defendant's qualifications to be a citizen.
> And finally, that the defendant knew that the statement was false when he made it.

On appeal, Shordja claims that the district court erred when it failed to instruct the jury on the element of materiality. However, the Government argues that the district court did in fact instruct the jury on the materiality requirement. Specifically, the Government argues that the third element in the court's instruction effectively states the materiality requirement.

Although we have not yet addressed the question of whether to recognize a materiality requirement in § 1425(a), the Government concedes that the statutory provision contains a materiality element. And other circuits that have considered whether § 1425 contains a materiality requirement have determined that it does. *See, e.g.*, *United States v. Latchin*,

554 F.3d 709, 712–13 (7th Cir. 2009); *United States v. Aladekoba*, 61 F. App'x 27, 28 (4th Cir. 2003); *United States v. Puerta*, 982 F.2d 1297, 1301–03 (9th Cir. 1992).

Even if there is a materiality requirement in § 1425(a), we need not address whether the district court's instructions satisfied that requirement because any error below was harmless in this case. If the district court neglected to properly instruct the jury, then an error occurred, but it would not be plain because "[a] plain error is a clear or obvious one." *United States v. Rodriguez-Penton*, 547 F. App'x 738, 739 (6th Cir. 2013) (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). The district court's failure to instruct a jury on the materiality requirement under § 1425(a) is not clear or obvious because we have not previously concluded that such requirement exists.

Similarly, Shordja cannot show that any error below would have affected his substantial rights. "An error 'affecting the defendant's substantial rights' has been described by the *Olano* court as 'error . . . that has affected the outcome of the district court proceedings.'" *United States v. Dedhia*, 134 F.3d 802, 809 (6th Cir. 1998) (quoting *Olano*, 507 U.S. at 734).

It is apparent from the evidence at trial that Shordja's false statements were "material" because his statements had the tendency to influence the naturalization process. When he completed his Application and again when asked in his naturalization interview by Stewart, Shordja answered "no" to the following questions:

> Question 23: "Have you ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?"

> Question 24: "Have you ever lied to any U.S. government official to gain entry or admission into the United States?"

Shordja should have answered "yes" to both of these questions because he entered the United States using a fake Italian passport in 1997, and he previously misled immigration officials in his 2002 petition to become a permanent resident—as well as on other occasions—about how he arrived in the United States. According to Stewart, providing misleading information to obtain an immigration benefit could impact one's ability to obtain citizenship. And Pierce testified that, had Shordja disclosed his illegal entry on his Application or in his naturalization interview, he "would not [have been] eligible for naturalization" because he had previously failed to do so on prior immigration forms. Thus, there was uncontroverted evidence that answering truthfully would have had a natural tendency to influence whether to grant Shordja's Application. *See Dedhia*, 134 F.3d at 809 (concluding that "[b]ecause the evidence of materiality is overwhelming in this case, we conclude that the [affects the defendant's substantial rights] prong[] simply cannot be met").

Therefore, any reasonable jury would have found Shordja's false statements to be material. Accordingly, we hold that any error below, if there were one, was harmless.

**III.**

"In reviewing a challenge to the sufficiency of the evidence, we must not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Farrow*, 198 F.3d 179, 186 (6th Cir. 1999) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)). Rather, we "determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.* (quoting *Davis*, 177 F.3d at 558).

Shordja claims that the evidence presented by the Government was insufficient to convict him of illegally procuring naturalization and making materially false statements. In this case, there is ample evidence in the record to support the verdict. The jury chose to give more weight to the documents in Shorjda's immigration file than to his testimony. As discussed above, numerous applications and interviews record Shordja's previous statements that he came to the United States legally. It was not until 2012—after Shordja procured United States citizenship— that he admitted to using a fake Italian passport.

Accordingly, we hold that there is sufficient evidence that Shordja illegally procured naturalization and made a false statement on his Application. A rational juror could conclude that Shordja provided the false statements on his Application and again in his naturalization interview with the intent to conceal the truth about his entry into the United States and that Shordja "knowingly procure[d]" naturalization in contravention to the law.

**AFFIRMED.**